**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**MICHAEL ERIC HORNES,**

    **Plaintiff,**

**v.**                                                 **Civil Action No. 2:06cv57
(Judge Maxwell)**

**UNITED STATES OF AMERICA,**

    **Defendant.**

**REPORT AND RECOMMENDATION ON DEFENDANT'S
MOTION TO DISMISS, PLAINTIFF'S MOTION TO AMEND AND
PLAINTIFF'S MOTION FOR CHANGE OF VENUE**

**I. Procedural History**

The *pro se* plaintiff initiated this case on June 8, 2006. In the complaint, Plaintiff seeks relief against the United States, the Federal Bureau of Prisons, Officer Vance and Officer Connelly, pursuant to the Federal Tort Claims Act ("FTCA"). On October 17, 2006, the undersigned conducted a preliminary review of the file and determined that summary dismissal of the complaint was not warranted at that time. Accordingly, the defendants were directed to file an answer.

On December 20, 2006, the United States filed a notice of substitution. In the notice, the United States asserted that the Plaintiff was seeking monetary damages against the defendants for the alleged negligent or wrongful acts or omissions of Officer Vance and Officer Connelly. Further, the United States certified that at the time of the alleged events, Officer Vance and Officer Connelly were acting within the scope of their federal employment. Because the FTCA provides that a suit against the United States shall be the exclusive remedy for persons having claims for damages resulting from the actions of federal employees taken within the scope of their employment, the

United States substituted itself for Officer Vance and Officer Connelly.

Upon review of the notice of substitution, the undersigned determined that the United States should be substituted for Officer Vance and Officer Connelly. In addition, the undersigned noted that the Bureau of Prisons was not a proper party under the FTCA. Therefore, the United States was substituted as the sole defendant in this action. Accordingly, the Clerk was directed to terminate the Bureau of Prisons, Officer Vance and Officer Connelly.

On December 22, 2006, the United States filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. Notice pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975), issued later that same day. On January 25, 2007, Plaintiff filed his reply to the Defendant's dispositive motion. On February 27, 2007, the Plaintiff filed a Motion to Amend his Complaint to add a Bivens[1] claim against Officer Vance and Officer Connelly. That motion has not yet been decided.

On April 6, 2007, Plaintiff filed a Motion for Change of Venue and Request for Court Assistance. In the motion, Plaintiff asserts that he is no longer incarcerated within the jurisdiction of this Court. Specifically, Plaintiff asserts that he has been transferred to the Hope Village Halfway House ("Hope Village") in Washington, D.C. Accordingly, Plaintiff requests the Court transfer his case to the United States District Court for the District of Columbia. In addition, Plaintiff asserts that he has several pending legal matters for which he must conduct legal research. However, Plaintiff asserts that Hope Village does not have a law library. Therefore, Plaintiff requests an Order from the Court compelling Hope Village to provide him access to a law library.

---

[1] Bivens v. Six Unknown Agents of Federal Bureau of Narcotics, 403 U.S. 388, 395 (1971) (authorizing suits against federal employees in their individual capacities for violations of constitutional rights).

## II. The Pleadings

### A. The Complaint

In the Complaint, Plaintiff asserts that on February 6, 2005, he was transferred to the Special Housing Unit ("SHU"). At that time, his property was inventoried and packed for storage by Officer Vance. While in the SHU, Officer Connelly allowed Plaintiff to retrieve his legal papers and certain allowable items from his property. In doing so, Plaintiff noticed that his property was thrown in and strewn about the property bins. In addition, Plaintiff's legal papers were in the same bin as his food, oils and other items that could damage those documents. Plaintiff further asserts that iced tea and Tang mix were spilled throughout the bins and covered his property. Plaintiff asserts that he complained to Officer Connelly because Officer Connelly is the SHU receiving property officer and was responsible for the proper storage of his property.

During his time in the SHU, Plaintiff asserts that he was not allowed to inventory his property even though he repeatedly requested permission to do so. Moreover, as Plaintiff packed his property for transfer back to the general population, he noticed that several items appeared to be either missing or damaged. Once Plaintiff was in his new housing unit, he conducted a thorough review of his property and discovered that several items were indeed missing and that several other items were in fact damaged. Therefore, Plaintiff filed an administrative tort claim with the Bureau of Prisons. Plaintiffs' claim was denied on March 13, 2006.

### B. The Defendant's Motion

In the defendant's Motion to Dismiss, the United States asserts that in his administrative tort claim, Plaintiff sought $300 in damages for the alleged loss of or damage to his personal property upon his transfer from the general population to the SHU in February of 2005. The defendant notes

that Plaintiff specifically alleges that the defendant lost or misplaced one pair of gray gym shorts, two pairs of boxers briefs, two pairs of boxers, three pairs of ankle socks, one Sony radio belt clip, one Sony radio battery housing cover, one pack of nightlight replacement bulbs (containing two bulbs), three Debitek cards (for copying), one package of cookies, one Tang drink mix, one iced tea mix, one container of jalapeno peppers, one Tide laundry detergent, one bag Doritos, one package of crackers, six mayonnaise squeeze packs (ten packs each), three bottles of prayer oil, one bottle baby oil, and one container of honey. In addition, the defendant notes that Plaintiff asserts that staff damaged one drinking cup and one mirror. The defendant asserts that Plaintiff's claim was denied because Plaintiff signed the Inmate Personal Property Record which certifies the accuracy of the property inventory and because there was not evidence of staff negligence.

In support of its request for dismissal and judgment as a matter of law, the defendant offers the following facts. On February 9, 2005, Plaintiff was removed from the general population and placed in the SHU. Plaintiffs' property was inventoried and sent to the SHU for storage. On February 21, 2005, Plaintiff was provided an opportunity to review his property and the accuracy of the inventory. Plaintiff did so and signed section 10(a) of the Inmate Personal Property Record which certifies the accuracy of the inventory and relinquishes all claims to any missing property not noted. In this case, Plaintiff signed the form without noting that any property was missing or damaged. However, Plaintiff noted on the form that he could not tell if everything was there and that he was signing only to acknowledge receipt.

On March 3, 2005, Plaintiff was again provided an opportunity to review his property and note any missing or damaged items. Plaintiff did so and signed section 10(b) of property form which certifies that upon his release from the SHU his property was released to him. At that time, Plaintiff

4

did not note that any property was missing or damaged.

With regard to Plaintiff's claims, the defendant asserts that in order to establish a prima facie case of negligence, Plaintiff must show the existence of a duty, a breach of that duty and that the breach was the proximate cause of his injuries. Moreover, the defendant recognizes that 18 U.S.C. § 4042 establishes the existence of a duty on the part of prison officials to safeguard an inmate's property. Thus, the defendant asserts that the issue in this case is whether the United States breached its duty of care to the Plaintiff in this case, or in other words, whether prison staff negligently handled Plaintiff's property.

In support of its request for judgment as a matter of law, the defendant asserts that when an inmate signs the Inmate Personal Property Record without noting any discrepancies, loss, or damage to the property, the inmate waives any claim regarding that property. Memorandum (dckt. 18-2) at 4 (citing Riley v. United States, 938 F. Supp. 708 (D.Kan. 1996)). In addition, the defendant asserts that where an inmate has failed to submit any evidence to contradict the inventory sheet or failed to submit any evidence that he possessed the alleged lost property at the time of his transfer, summary judgment is appropriate. Id. at 5 (citing Wolff v. Hood, 242 F.Supp.2d 811 (D. Or. 2002)).

In this case, the defendant argues that Plaintiff has provided no evidence beyond his bare assertions that he possessed the property to show that he actually did possess the alleged lost property at the time he was transferred to the SHU.[2] In addition, Plaintiff signed the property form

---

[2] The defendant provides the following examples: first, Plaintiff's only purchase of Tide laundry soap occurred on July 29, 2004 and costs $5.60. However, in another case filed in this Court by Plaintiff, case number 1:06cv91, Plaintiff claims that he had one package of Tide laundry soap in his possession in March of 2005 when he was again transferred to the SHU. In that case, Plaintiff asserts that such package was then missing upon his release. Because Petitioner only made one purchase of Tide laundry soap prior to February and March of 2005, the defendant argues that Plaintiff could not possibly have had Tide laundry soap in March of 2005, if his Tide laundry soap was not returned in February of 2005. Second, the defendant asserts that in the complaint, Plaintiff claims the loss of three bottles of prayer oil.

5

on two occasions without noting any discrepancies or missing property.

Next, the defendant asserts that Plaintiff's claim is frivolous. In support of this claim, the defendant asserts that the Fourth Circuit has held that Courts may consider the *de minimus* value of a claim as one factor in applying the frivolity test of 28 U.S.C. § 1915 (e)(2)(B)(i). Id. at 6 (citing Nagy v. FMC Butner, 376 F.3d 252, 257) (4th Cir. 2004). Furthermore, the defendant asserts that although Plaintiff has valued the loss of his property at $300, it appears that the value Plaintiff has assigned to the alleged missing or damaged items is exaggerated. Based on the current cost of such items in the Commissary, the defendant estimates that the value of the items is actually closer to $122 dollars. Because the cost of the items is much less than the amount of the filing fee in this case, the defendant argues that a reasonable person would not have brought suit and that Plaintiff's claim is frivolous.[3]

Finally, the defendant asserts that there are other discrepancies with regard to Plaintiff's claims of damaged property. For example, the defendant notes that Plaintiff complains that his Sony belt clip and battery housing cover were damaged, but that he alleges no damage to the radio itself. The defendant asserts that it is inconceivable that the belt clip and battery housing cover could have been damaged without damage to the radio itself.

---

However, at the time Plaintiff arrived at FCI-Gilmer, he had only one bottle of prayer oil in his possession. Commissary records show that Plaintiff purchased a second bottle on October 6, 2004. Therefore, the defendant asserts that Plaintiff could not possibly have lost three bottles of prayer oil as he did not possess three bottles of prayer oil. Third, the defendant asserts that of the consumable items that Plaintiff claims were missing, his commissary purchases show that Plaintiff purchased such items on a frequent and regular basis prior to his transfer to the SHU. However, Plaintiff's last purchase of such items was in October and November of 2004, some three to four months prior to his transfer. Thus, it was not likely that any of those items remained in Plaintiff's possession at the time he was transferred to the SHU.

[3] At the time this case was filed, the filing fee for initiating a civil action in this Court was $350.

As to Plaintiff's claim that his due process rights were violated, the defendant asserts that the FTCA cannot be used to raise a constitutional claim as the United States has not waived its sovereign immunity with respect to constitutional torts. Memorandum at 13 (citing <u>FDIC v. Meyer</u>, 510 U.S. 471 (1994)). To the extent such claims can be made, the defendant argues they must be made against the individual federal employees who allegedly violated his rights. <u>Id.</u> (citing <u>Bivens</u>, <u>supra</u>). However, the defendant argues that Plaintiff has not alleged claims against the individual defendants in their individual capacities. <u>Id.</u> at 14. Instead, Plaintiff alleged that the individual federal employees responsible for his property were acting within the scope of their employment at the time his property was allegedly misplaced or damaged. <u>Id.</u>

Next, the defendant argues that Plaintiff's FTCA claim is based on the defendant's failure to follow it's own policy, specifically, Program Statement 5580.60. However, the FTCA makes the United States liable only to the extent that a private person would be liable under State law. The defendant argues that a private person would not be liable under State law for an alleged violation of an internal BOP Program Statement and therefore, the United States cannot be held liable on those same grounds. Thus, the defendant asserts that Plaintiff's claim is not cognizable under the FTCA and must be dismissed.

With regard to the Plaintiff's claim of pain and suffering, and/or other mental or emotional damages, the defendant asserts that without a showing of a physical injury, Plaintiff is barred from recovering such damages under the Prison Litigation Reform Act, 28 U.S.C. § 1346(b)(2).

## C. **Plaintiff's Reply**

In his reply to the defendant's motion to dismiss, Plaintiff asserts that because he is *pro se*, his pleadings are entitled to liberal construction. As such, Plaintiff asserts that he has alleged

sufficient facts to state a claim. In addition, Plaintiff asserts that the facts put forth by the defendant are not accurate, that the property and commissary receipts provided by the defendant prove that he owned the items in question and that the defendant fails to give the Court a clear picture of the process of signing for property when leaving the SHU.

Next, Plaintiff asserts that he reserved his rights by making a notation on the property inventory form and that the cases cited by government are distinguishable because the inmate in those cases never made a reservation of rights. In addition, Plaintiff asserts that the defendant failed to itemize the value of Sony radio and failed to take into account that some of the items were purchased at another institution where the items were more expensive. Despite the actual value of the property, however, Plaintiff asserts that he is entitled to recover the costs of the items despite their actual value because he earned only $5 a month at FCI-Gilmer and it will take him years to recoup the lost property.

With regard to the breach of the duty of care, Plaintiff asserts that Officer Vance and Officer Connelly did not follow Bureau policy in packing and storing his personal property. Moreover, those Officers admitted that they did not follow policy by failing to respond to the notices Plaintiff sent them about items.

Further, Plaintiff states that the BOP did not conduct a proper investigation into his tort claim and that the United States' assertion that he did not have items in his possession at the time of his transfer to the SHU is pure conjecture.

As to the appropriateness of the defendant's request for summary judgment, Plaintiff asserts that declarations are not sufficient substitutes for affidavits under Rule 56 because affidavits must be based on personal knowledge and not hearsay. Because the defendant provides declaration in

8

place of affidavits, Plaintiff asserts that the Defendant has failed to produce any evidence affirmatively rebutting his claims.

### III. Standard of Review

**A. Motion to Dismiss**

In ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded material factual allegations. Advanced Health-Care Servs., Inc., v. Radford Community Hosp., 910 F.2d 139, 143 (4th Cir. 1990). Moreover, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear as a matter of law that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

When a motion to dismiss pursuant to Rule 12(b)(6) is accompanied by affidavits, exhibits and other documents to be considered by the Court, the motion will be construed as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

**B. Motion for Summary Judgment**

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. Rule 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of

whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment. Id. at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, 475 U.S. at 587 (citation omitted).

## IV. Analysis

### A. Tort Claim

The FTCA waives the federal governments' traditional immunity from suit for claims based on the negligence of its employees. 28 U.S.C. § 1346(b)(1). "The statute permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." Medina v. United States, 259 F.3d 220, 223 (4th Cir. 2001). Because all of the alleged negligent acts occurred in West Virginia, the substantive law of West Virginia

10

governs this case.

In West Virginia,

> every action for damages resulting from injuries to the plaintiff, alleged to have been inflicted by the negligence of the defendant, it is incumbent upon the plaintiff to establish . . . three propositions: (1) A duty which the defendant owes to him; (2) A negligent breach of that duty; (3) Injuries suffered thereby, resulting proximately from the breach of that duty.

Webb v. Brown & Williamson Tobacco Co., 2 S.E.2d 898, 899 (W. Va. 1939).

With regard to federal prisoners, the BOP owes a duty to provide suitable quarters, and to provide for the inmates' safekeeping, care, and subsistence. 28 U.S.C. § 4042(a). This duty, similar to the duty of a landowner in West Virginia, has been interpreted as one of "reasonable care." See McNeal v. United States, 979 F. Supp. 431 (N.D. W. Va. 1997); Burdette v. Burdette, 127 S.E.2d 249 (1962). "Negligence is the violation of the duty of taking care under the given circumstances. It is not absolute, but is always relative to some circumstances of time, place, manner, or person." Mallet v. Pickens, 522 S.E.2d 436, 446 (W. Va. 1999) (citations omitted).

Because 18 U.S.C. § 4042 recognizes the existence of a duty, Plaintiff's claim is not based solely on his allegation that the defendant failed to follow its own internal policy. Therefore, it appears that Plaintiff's claim is properly raised under the FTCA. In addition, because of the existence of its statutory duty, the issue in this case is whether the defendant breached such duty and whether such breach was the proximate cause of Plaintiff's loss. In other words, the Court must focus on whether prison officials were negligent in handling Plaintiff's property. Reviewing the facts in the light most favorable to the Plaintiff, the Court finds that there was no breach of duty and even if there was, Plaintiff's claim is frivolous.

On February 9, 2005, Plaintiff was removed from the general population and placed in the

SHU. His personal property was inventoried, packed and stored that same day. Therefore, it appears that Plaintiff's property was promptly secured and stored in compliance with Bureau regulations.[4] However, Plaintiff contends that staff failed to pack all of his personal property and/or lost or misplaced such property after it was stored. Nonetheless, other than his own self-serving statements, Plaintiff has failed to show that any of the missing items were with his personal property in his cell at the time Officer Vance packed Plaintiff's property. In addition, to the extent that Plaintiff asserts that certain items were damaged, Plaintiff has failed to show that such items were not damaged prior to the time they were packed and stored.

However, at this particular stage of the litigation, the Court recognizes that it must accept all well-pleaded facts as true and must resolve any ambiguity and draw all factual inferences in Plaintiff's favor. Therefore, although it is questionable that Plaintiff even possessed the missing items at the time in question, for purposes of this Order, the Court will assume that Plaintiff possessed the items at the time he was placed in the SHU and that they were not damaged. Nevertheless, even assuming these facts as true, and accepting that there was a breach of duty, Plaintiff's claim for damages is frivolous.

In <u>Deutsch v. United States</u>, 67 F.3d 1080, 1081 (3d Cir. 1995), the Third Circuit Court of Appeals found that "a Court may dismiss an in forma pauperis claim as frivolous if, after considering the contending equities, the court determines that the claim is: (1) of little or no weight,

---

[4] Although the undersigned believes that a prisoner may, in some circumstances, be barred from recovery where he has signed the Inmate Property Record without noting any discrepancies, such is not the case in this instance. Here, Plaintiff signed the Inmate Property Record but expressly stated that he was unable to review his property and that he was signing only to acknowledge receipt. This is not the same circumstances for which the District of Kansas or the District of Oregon was faced with when deciding that signing the property waives any claim to lost or damaged property. Therefore, Plaintiff is correct that his case is distinguishable and the holding in those cases is not applicable here.

value, or importance; (2) not worthy of serious attention; or (3) trivial." Granting such authority to the district court under 28 U.S.C. § 1915 serves the in forma pauperis statute's "frequently overlooked purpose of providing the courts with a vehicle for conserving scarce judicial resources and assuring that resources are used in the most just manner possible."[5] Id. at 1089.

In determining whether a claim is frivolous, the court should make a two-step analysis. First, the court should compare the cost/recovery differential and determine whether the reasonable paying litigant would have been dissuaded from filing. Id. at 1088. "Accordingly, the court must first find the actual amount in controversy under the claim presented and determine whether the amount in controversy is less than the expense of the court costs and filing fees." Id. at 1089-1090 (emphasis added). In addition, although the Third Circuit recognized "that some litigants request large sums for a monetary remedy," the Court found that the amount requested by the Plaintiff "should be of no moment when a district court inquires as to whether a claim is economically trivial." Id. at 1089, n. 10.

Second, the Court should determine whether the litigant "has a nonmonetary interest at stake under the claim," which would warrant the allocation of the court's resources "despite the fact that the claim is economically trivial." Id. at 1090. If the actual amount in controversy is less than the court costs and filing fees, and the court is satisfied that there is no other meaningful interest at stake, then the suit should be dismissed as frivolous. Id.

In the complaint, Plaintiff alleges that the following items are missing and the defendant has assigned the following replacement value to each item based upon FCI-Gilmer commissary prices

---

[5] See also Nagy v. FMC Butner, 376 F.3d 252 (4th Cir. 2004) (finding that a district court may consider the value of a prisoner's claim when determining whether to dismiss it as frivolous under the *in forma pauperis* statute).

for 2004/2005:

    (1) 1 pair gray gym shorts - $14.30;

    (2) 2 pairs boxers - $22.90;

    (3) 2 pairs boxer briefs - $16.90;

    (4) 3 pair ankle socks - $6.25;

    (5) 1 Sony radio clip - cannot value (not sold separately from radio);

    (6) 1 Sony radio battery cover - cannot value (not sold separately from radio);

    (7) 1 pack nightlight replacement bulbs - $7.30;

    (8) 3 Debitek cards for photocopying - $19.50;

    (9) 1 pack Chip'O'Riffic Cookies - $2.40;

    (10) 1 Tang drink mix - $2.10;

    (11) 1 iced tea drink mix - $1.90;

    (12) 1 pack jalapeno peppers - $1.85;

    (13) 1 Tide laundry detergent - $5.60;

    (14) 1 bag Doritos - $1.90;

    (15) 1 pack Town House Crackers - $3.45;

    (16) 6 Mayonnaise squeeze packs - $4.50;

    (17) 3 bottles of prayer oil - $5.00;

    (18) 1 bottle baby oil - $0.80; and

    (19) 1 container honey - $2.15.

In addition, Plaintiff asserts that the following items were damaged, and the defendant has assigned the following replacement value to each of these items based upon FCI-Gilmer

Commissary prices for 2004/2005:

(1) 1 drinking cup - $1.55; and

(2) 1 mirror - $2.30.

Therefore, according to commissary prices for 2004/2005, the defendant asserts that the total replacement cost for these items, excluding the Sony radio parts, is $122.65. Plaintiff asserts that the value of the Sony radio was $37. Adding the total replacement cost of the radio to the defendant's assessed value of the items, rather than just the cost of replacing the missing items, Plaintiff's total replacement cost is $159.65, according to commissary prices at FCI-Gilmer. Plaintiff does not object to the defendant's valuation of the items other than to note that some of the missing or damaged items were purchased at another institution where the cost for those items was higher. However, Plaintiff does not state what items were purchased at that institution, or what the price differential is for those items.

Nonetheless, even assuming that Plaintiff did purchase some of the items at different institutions at a higher cost, the Court finds that the actual value of Plaintiff's property falls somewhere around $200. As already noted, the approximate replacement value of the items based on commissary rates at FCI-Gilmer is $159.65. Although Plaintiff does not dispute that valuation generally, he does place a higher total value on the items based upon the fact that some of the items were purchased at a different institution for a greater price. However, although the Court accepts that there may be some variation of price between facilities based on things like region, accessibility, and supplier, it is simply not probable or likely that the other institution charged more than twice the amount that FCI-Gilmer charged for the same items. In fact, that institution would have had to charge well over twice as much for the same items since Plaintiff acknowledges that at only some

15

of the items were purchased at the other institution. That would mean then, that only a handful of the items on the list was purchased at another facility and that they cost approximately $140 more at that institution. Such assertion belies common sense.

Accordingly, the Court finds that some of the items were purchased at another institution at higher prices than those at FCI-Gilmer and that the actual value of Plaintiff's lost and damaged property is approximately $200. However, the replacement value of Plaintiff's property is clearly only $159.65, as that is how much it will cost Plaintiff to replace the items from the FCI-Gilmer commissary. Either way, Plaintiff's loss in this case was *de minimus* and the actual amount of damages does not exceed the court costs and filing fees in this case. Thus, the undersigned finds that the reasonable paying litigant would have been dissuaded from filing suit.

In addition, upon a review of the complaint, the undersigned finds that there are no other meaningful interests at stake. Therefore, it is recommended that the Plaintiff's tort claim be dismissed as frivolous.

## B. **Mental and Emotional Damages**

No federal action, whether it alleges a tort claim or a constitutional violation, may be brought by a prisoner for mental or emotional injury suffered while in custody without a showing of physical injury. See 42 U.S.C. § 1997e(e). To overcome that limitation on recovery, the underlying physical injury must be more than *de minimus*, but need not be significant. See Perkins v. Dewberry, 139 Fed.Appx. 599 (4th Cir. July 28, 2005) (*per curiam*); Oliver v. Keller, 289 F.3d 623, 627 (9th Cir. 2002); Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309, 1312-1313 (11th Cir. 2002); Harper v. Showers, 174 F.3d 716, 719 (5th Cir. 1999). Here, Plaintiff cannot show a physical injury or that his claim is more than *de minimus*. Accordingly, any claim for mental or emotional damages

must be dismissed.

C. **Due Process Claim**

The FTCA waives the United States sovereign immunity with respect to torts, not with respect to constitutional claims. <u>FDIC v. Meyer</u>, <u>supra</u>. Therefore, the FTCA cannot be used to raise constitutional claims. Those claims must be asserted against the specific federal employees whose conduct gave rise to the claims. See <u>Bivens</u>, <u>supra</u>. However, in this instance, Plaintiff asserts that the individual federal defendants were acting within the scope of their employment at the time his property was misplaced or damaged. Thus, the individual federal defendants were clearly acting in their official capacities and Plaintiff cannot assert a due process claim against the United States. To the extent that Plaintiff seeks to raise claims involving the individual federal employees, those claims will be addressed more fully below.

## V. **Plaintiff's Pending Motions**

A. **Motion to Amend**

In his motion to amend, Plaintiff seeks to add a <u>Bivens</u> claim against Officer Vance and Officer Connelly. In support of his motion, Plaintiff asserts that he intended his complaint to include claims against the United States pursuant to the FTCA and claims against Officer Vance and Officer Connelly under <u>Bivens</u>. However, Plaintiff asserts that in his complaint, he inadvertently stated that his claims only arose pursuant to the FTCA, thus prompting the United States to be substituted as the sole defendant in this case. Accordingly, Plaintiff wishes to revive his claims against Officer Vance and Officer Connelly by adding constitutional claims against those defendants in their individual capacities pursuant to <u>Bivens</u>. Specifically, Plaintiff asserts that Officer Vance and Officer Connelly deprived him of a liberty interest in his personal property.

17

As Plaintiff notes, leave to amend should be freely given under Rule 15 of the Federal Rules of Civil Procedure. However, unlike claims against state actors under 42 U.S.C. § 1983, constitutional claims against individual federal employees are not statutorily authorized. Instead, those claims were created only through judicial authority. Thus, constitutional claims against federal employees in their individual capacities are subject to the limitations of judicial authority.

In <u>Carlson v. Green</u>, 446 U.S. 14 (1980), the Supreme Court found two instances in which a <u>Bivens</u> action cannot be maintained. First, when there are "special factors counseling hesitation in the absence of affirmative action by Congress." <u>Carlson</u>, 446 U.S. at 18. Second, when "Congress has provided an alternative remedy which is explicitly declared to be a *substitute* for recovery directly under the Constitution and viewed as equally effective." <u>Id.</u> at 18-19 (emphasis in original).

Here, Congress has explicitly stated that the exclusive remedy for recovery of loss of property is against the United States. <u>See</u> 28 U.S.C. § 2679(b)(1) ("The remedy against the United States provided by sections 1346(b) and 2672 of this title for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment *is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim . . .* ") (emphasis added). Accordingly, in this instance, Plaintiff cannot bring a <u>Bivens</u> action against Officer Vance and Officer Connelly. Therefore, his motion to amend his complaint must be DENIED.

## B. **Motion to Change Venue and for Court Assistance**

In this motion, Plaintiff asserts that he is no longer incarcerated within the jurisdiction of this

Court. Specifically, Plaintiff asserts that he has been transferred to the Hope Village Halfway House ("Hope Village") in Washington, D.C. Accordingly, Plaintiff requests the Court transfer his case to the United States District Court for the District of Columbia. In addition, Plaintiff asserts that he has several pending legal matters for which he must conduct legal research. However, Plaintiff asserts that Hope Village does not have a law library. Therefore, Plaintiff requests an Order from the Court compelling Hope Village to provide him access to a law library.

Pursuant to 28 U.S.C. § 1404(a), "in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." In this instance, Plaintiff brings claims against the United States pursuant to the FTCA. Therefore, Plaintiff's claims could only have been brought "in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." 28 U.S.C. § 1402(b). At the time this case was filed, Plaintiff was incarcerated at the Gilmer Federal Correctional Institution within this district. Moreover, the acts or omissions giving rise to Plaintiff's claims occurred within this district. Thus, transfer to the United States District Court for the District of Columbia would not be proper in this instance. However, even if it were, the convenience of the parties and the interests of justice are best served by retaining Plaintiff's case in this Court as the events giving rise to the complaint occurred within this district, any records are likely maintained within this district, and any witnesses, other than Plaintiff, most likely reside within this district.

With regard to Plaintiff's request for assistance, it appears that Plaintiff raises an issue that is related to, but separate from the case at hand. Additionally, this Court does not have personal jurisdiction over matters occurring at a halfway house in Washington, D.C. Thus, Plaintiff's claims regarding the lack of law library should be raised within the appropriate jurisdiction, after the

exhaustion of administrative remedies. Accordingly, Plaintiff's Motion for Change of Venue and for Court Assistance should be DENIED.

## VI. Recommendation

For the foregoing reasons, it is the recommendation of the undersigned that the defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (dckt. 18) be **GRANTED** and this case be **DISMISSED with prejudice**. In addition, the undersigned recommends that Plaintiff's Motion to Amend (dckt. 22) and Motion for Change of Venue and for Court Assistance (dckt. 24) be **DENIED**.

Within ten (10) days after being served with a copy of this Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections should also be submitted to the Honorable Robert E. Maxwell, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Report and Recommendation to the *pro se* plaintiff.

DATED: April 18, 2007.

/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE